**UNITED STATES of America**

v.

**Noe VALLEJO–SALAS**

**No. CRIM B–03–436–001.**

United States District Court, S.D. Texas, Brownsville Division.

Sept. 3, 2003.

Noe Vallejo Salas, Brownsville Interpreter, U.S. District Court, Federal Public Defender, Brownsville, TX, for defendant.

**MEMORANDUM OPINION**

HANEN, District Judge.

The Defendant has pleaded guilty to violating 8 U.S.C. §§ 1326(a)-(b) ("Alien Unlawfully Found in the United States after Deportation"). *Docket No. 4.* The requisite prior felony conviction necessary to trigger subsection (b) was for "Burglary of a Building" in violation of TEX. PEN. CODE § 30.02(c)(1). At issue is how this prior conviction should be treated for purposes of sentencing under the United States Sentencing Guidelines ("U.S.S.G."). The Government contends that this prior conviction constitutes a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii) and, therefore, requests that the Court assess the Defendant a sixteen-level sentencing enhancement. *Docket Nos. 15, 18.* The Defendant objects to said assessment and maintains that a four-level enhancement is appropriate under U.S.S.G.

§ 2L1.2(b)(1)(D). *Docket Nos. 9, 17.* As decreed in open court during Defendant's sentencing hearing on August 27, 2003, the Court **SUSTAINS** the Defendant's objection and **FINDS** that the Defendant is subject to a 4–level enhancement as per U.S.S.G. § 2L1.2(b)(1)(D). The Court now memorializes said decision in this memorandum opinion so as to offer the parties a more detailed explanation of its ruling.

## I. BACKGROUND

The dispositive facts are not in dispute. On January 23, 2002, the Defendant was indicted for "Burglary of a Habitation." *Docket No. 10* at ¶¶ 6, 13; *see also Docket No. 15* (copy of indictment attached thereto). However, the Defendant never went to trial on this charge. Instead, the Defendant pleaded guilty to the lesser included offense of "Burglary of a Building" in the 197th District Court of Cameron County, Texas, on April 30, 2002. *Docket No. 10* at ¶¶ 6, 13, 24. The Defendant's plea of guilty resulted in a sentence of five years deferred adjudication as per TEX. CODE CRIM. PROC. art. 42.12, § 5. *Id.* at ¶¶ 6, 13, 24; *Docket No. 15* (judgment attached). The state district court's judgment, a document entitled "Order of Deferred Adjudication; Placement On Community Supervision," specifies that the Defendant's sentence was imposed pursuant to a plea of guilty to the "State Jail Felony Offense" of "Burglary of a Building." *See Docket No. 15* (copy of said document attached thereto). The Defendant was subsequently deported on April 9, 2003. *Docket No. 10* at ¶¶ 6, 13, 24. He subsequently illegally reentered the country on April 23, 2003 and was taken into custody by the United States Border Patrol on April 26, 2003, after which he was indicted on the present charge. *Id.* at ¶¶ 1–6.

A single statute governs all burglary-related crimes in Texas. *See* TEX. PEN. CODE § 30.02 ("Burglary"); *see also Unit-ed States v. Silva,* 957 F.2d 157, 162 (5th Cir.1992) ("Section 30.02 of the Texas Penal Code is a generic burglary statute ...."), *cert. denied,* 506 U.S. 887, 113 S.Ct. 250, 121 L.Ed.2d 182 (1992). It does not explicitly label offenses as either "Burglary of a Building" or "Burglary of a Habitation." Instead, the statute differentiates between burglaries of buildings and habitations by prescribing differing punishments for each. *Compare* TEX. PEN. CODE § 30.02(c)(1) (rendering burglary of buildings other than a habitation a state jail felony), *with* TEX. PEN. CODE § 30.02(c)(2) (rendering burglary of a habitation a felony of the second degree) *and* TEX. PEN. CODE § 30.02(d) (rendering burglary of a habitation in which the defendant either entered the habitation with intent to commit a felony other than theft or committed such a non-theft felony a felony of the first degree). Federal case law recognizes the foregoing distinction between burglaries of buildings and habitations in state law and accounts for it in federal sentencing. *See United States . v. Rodriguez–Rodriguez,* 323 F.3d 317, 318 n. 5 (5th Cir.2003) (per curiam)· ("Our cases recognize that burglary of a building and burglary of a dwelling or habitation are distinct offenses.").

The Government readily concedes that the Defendant pleaded guilty to "Burglary of a Building." *Docket No. 15* at ¶ 3 ("On April 20, 2002, the defendant pleaded guilty to the 'Lesser Included Offense Burglary of a Building' in violation of Texas Penal Code § 30.02(c)(1)."). Given this fact, *Rodriguez–Rodriguez* would appear to require this Court not to assess the Defendant the sixteen-level sentencing enhancement that the Government requests. *See Rodriguez–Rodriguez,* 323 F.3d at 318–19 (holding that Texas's "Burglary of a Building" offense does not constitute a crime of violence for purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii)). Nonetheless, the Government contends that *Rodriguez–*

*Rodriguez* is not controlling. *Docket No. 15* at ¶¶ 9–15. For reasons related to those articulated in *United States v. Sanchez–Loredo,* 274 F.Supp.2d 873 (S.D.Tex. 2003), this Court rejects the Government's contention.

## II. DISCUSSION

The Sentencing Guideline at issue imposes a Base Offense Level of eight points and then assesses additional points on a graduated scale on the basis of the nature of a defendant's prior conviction(s). U.S.S.G. § 2L1.2. The Government maintains that the Defendant's prior burglary conviction merits a sixteen-point enhancement as a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). The Commentary to the present version of § 2L1.2 defines "crime of violence." According to the Commentary, the phrase "crime of violence":

> (I) means an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another; and
>
> (II) includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including sexual abuse of a minor), robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.

U.S.S.G. § 2L1.2 App. Note 1(B)(ii). The Commentary to the guidelines is accorded "controlling weight ... if it is not plainly erroneous or inconsistent with the guidelines." *Rodriguez–Rodriguez,* 323 F.3d at 318.

The Fifth Circuit has clarified that Application Note 1(B)(ii)'s bifurcated definition of "crime of violence" is to be read disjunctively. *United States v. Calderon–Pena,* 339 F.3d 320 (5th Cir.2003). That is, a prior offense qualifies as a "crime of violence" if it meets the terms of either subparagraph (I) or (II), notwithstanding the use of "and" that links the two subparagraphs. *United States v. Rayo–Valdez,* 302 F.3d 314, 316–19 (5th Cir.2002), *cert. denied,* 537 U.S. 1095, 123 S.Ct. 694, 154 L.Ed.2d 645 (2002). In other words, a prior conviction may constitute a "crime of violence" if (a) it is among the specifically enumerated offenses in subparagraph (II), or (b) "it 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" *United States v. Vargas–Duran,* 319 F.3d 194, 196 (5th Cir.2003) (quoting *Rayo–Valdez,* 302 F.3d at 316), *reh'g en banc granted,* 336 F.3d 418 (5th Cir.2003); *see also Rodriguez–Rodriguez,* 323 F.3d at 318 (same).

The · Fifth Circuit has expressly held that a Texas state conviction for "Burglary of a Building" under TEX. PEN. CODE § 30.02 is not a "crime of violence" as this phrase is defined in of U.S.S.G. § 2L1.2 App. Note 1(B)(ii). *Rodriguez–Rodriguez,* 323 F.3d at 318–19. The Government would distinguish *Rodriguez–Rodriguez,* arguing that the Fifth Circuit addressed solely the first subparagraph of U.S.S.G. § 2L1.2 App. Note 1(B)(ii). *Docket No. 15* at ¶¶ 9–10. This argument is mistaken. *See Rodriguez–Rodriguez,* 323 F.3d at 318–19 & n. 5 (noting that burglary of a building is "not among the offenses enumerated in Application Note 1(B)(ii)(II)" and distinguishing between burglaries of a buildings and habitations). The court of appeals made this fact unmistakably clear in its conclusion. *See id.* at 319 (holding that, because Texas's burglary of a building offense is neither "listed in Application Note 1(B)(ii)(II)" nor "has as an element the use, attempted use, or threatened use of physical force against the person of another," it is not a crime of violence "within the meaning of U.S.S.G. § 2L1.2(b)(1)(A)(ii)"). In short, this Court thinks that the court of appeals has al-

ready definitively resolved this issue in favor of the Defendant.

The Government has, however, made a more plausible argument to the contrary. In an attempt to distinguish *Rodriguez–Rodriguez* from the present case, the Government argues that:

> Nowhere in *Rodriguez–Rodriguez* did the court consider the information contained in the defendant's Indictment or the ambiguity of the statutory definition of the defendant's predicate burglary of a building offense. However, when the predicate statutory definitions ambiguously encompass "conduct which may or may not be included in the applicable guideline" the courts may look beyond the statutory definitions, even to the charging documents.... Hence, even if the Court is to look only to the *fact* of conviction, the charging instrument should be reviewed.

*Docket No.15* at ¶ 10 (emphasis in original) (citations omitted). This contention is bolstered by a recent Fifth Circuit decision. In *Calderon–Pena*, the court of appeals addressed such an argument in the context of interpreting U.S.S.G. § 2L1.2(b)(1)(A)(ii), concluded that *Rodriguez–Rodriguez* was not dispositive, and ultimately affirmed a district court's decision to examine the charging document in resolving whether a defendant's predicate felony conviction was a "crime of violence." *Calderon–Pena*, 339 F.3d 320, at 327–31. Nonetheless, this Court finds that *Calderon–Pena*, to the extent that its holding is applicable on the present facts, is distinguishable from the instant case on two interrelated grounds. First, the Court does not regard the Defendant's predicate

prior felony conviction to be ambiguous in any sense. Second, because the present Defendant pleaded guilty to a crime other than the one for which he was charged, examination of the indictment will, in fact, involve the sort of factual inquiry forbidden by *Rodriguez–Rodriguez*.

Relying on the mistaken premise that *Rodriguez–Rodriguez* solely addressed the first prong of U.S.S.G. § 2L1.2 App. Note 1(B)(ii)'s definition,[1] the Government argues that the Defendant's "Burglary of a Building" conviction is a "crime of violence" under U.S.S.G. § 2L1.2 App. Note 1(B)(ii)(II). *See Docket No. 15* ("Summary of the Argument"). This second prong of the "crime of violence" definition specifically enumerates "burglary of a dwelling." U.S.S.G. § 2L1.2 App. Note 1(B)(ii)(II). Offenses enumerated under U.S.S.G. § 2L1.2 App. Note 1(B)(ii)(II) unfailingly constitute a "crime of violence." *Rayo–Valdez*, 302 F.3d at 317. Examination of the underlying conduct that formed the basis for a conviction of an enumerated offense is neither proper nor necessary; courts must employ a categorical approach that solely takes cognizance of the fact of conviction and the offense's statutory definition in determining whether a state criminal provision coincides with those listed in U.S.S.G. § 2L1.2 App. Note 1(B)(ii)(II). *Calderon–Pena*, 339 F.3d 320, at 326–27; *Vargas–Duran*, 319 F.3d at 196; *Rodriguez–Rodriguez*, 323 F.3d at 318–19 & n. 9; *see also United States v. Rodriguez–Duberney*, 326 F.3d 613, 617 n. 3 (5th Cir.2003) (noting that the categorical approach remains valid regarding "crime of violence" inquiries, notwithstanding appel-

---

**1.** *See Rodriguez–Rodriguez*, 323 F.3d at 318 ("Because burglary of a building and UUMV are not among the offenses enumerated in *Application Note 1(B)(ii)(II)*, they are crimes of violence only if they have as an element 'the use, attempted use, or threatened use of physical force against the person of anoth-

er.' ") (emphasis added); *id.* at 319 ("In summary, then, we hold that the Texas offenses of burglary of a building and UUMV are not crimes of violence within the meaning of U.S.S.G. § 2L1.2(b)(1)(A)(ii) because neither offense is listed in *Application Note 1(B)(ii)(II)* ....") (emphasis added).

late court's refusal to extend it to drug trafficking offenses under U.S.S.G. § 2L1.2(b)(1)(A)(i)), *petition for cert. filed,* (U.S. July 6, 2003) (No. 03–5345).[2]

The source of the aforementioned categorical approach is *Taylor v. United States,* 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). *See Calderon–Pena,* 339 F.3d 320, at 327 n. 4 (tracing the Fifth Circuit's categorical approach jurisprudence back to *Taylor*). The Government argues that *Taylor* condoned a less categorical approach under certain circumstances. *See Docket No. 15* at ¶ 12 ("The [Fifth Circuit] has recognized that *Taylor* permits the trial court to look at the charging documents when needed to discern the type of offense actually committed, particularly where a statute incorporates various manners of perpetrating an offense within the single statute."). The Government's argument for the application of this modified categorical approach appears to be premised on the fact that multiple burglary-related offenses are housed within TEX. PEN. CODE § 30.02 and the overlapping definitions provided in TEX. PEN. CODE § 30.01. Section 30.01 defines both "habitation" and "building" in such a way that

the former is a subset of the latter. *See* TEX. PEN. CODE § 30.01(2) (" 'Building' means any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use"). Accordingly, the Government argues that it is conceivable that Defendant's conviction for "Burglary of a Building" might be one that involved a "habitation," or, in the parlance of the Sentencing Guidelines, a "dwelling." *Docket No. 15* at ¶ 8; *Docket No. 18* at ¶ 5. On this basis, the Government urges the Court to look to the indictment, by which the Defendant was originally charged with "Burglary of a Habitation." *Docket No. 15* at ¶ 15.

The Government is correct in its assertion that, under the right circumstances, *Taylor*'s categorical approach is subject to modification. *Taylor,* 495 U.S. at 602, 110 S.Ct. 2143 ("This categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases ...."). Although the *Taylor* Court was not applying any Sentencing Guideline provision, let alone the one at issue in this case, the Fifth Circuit has applied *Taylor*'s categorical

---

**2.** In *Rodriguez–Duberney,* the court of appeals addressed the phrase "crime of violence" as this phrase is defined in 18 U.S.C. § 16. *Rodriguez–Duberney,* 326 F.3d at 616. The court noted that it is the aforementioned statute's use of the wording "by its nature" that compels a categorical approach. *Id.* at 616–17. While the definition of "crime of violence" provided in 18 U.S.C. § 16 remains relevant in the sentencing context, *see* U.S.S.G. § 2L1.2 APP. NOTE 1(B)(2) and 8 U.S.C. § 1101(a)(43)(F), the Guidelines have been revised so that the phrase "crime of violence" is defined directly by the Sentencing Guideline's Commentary for purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii). *See generally United States v. Caicedo–Cuero,* 312 F.3d 697, 709–11 (5th Cir.2002) (discussing the definitions of "crime of violence" employed in the 2000 Sentencing Guidelines and the revised 2001 Sentencing Guidelines), *cert. denied,* — U.S.

—, 123 S.Ct. 1948, 155 L.Ed.2d 864 (2003). Nonetheless, the revised definition of "crime of violence" provided in U.S.S.G. § 2L1.2 APP. NOTE 1(B)(ii) remains categorical in nature. First, subparagraph (II) provides a finite list of crimes that constitute *per se* crimes of violence. *See* U.S.S.G. § 2L1.2 APP. NOTE 1(B)(ii)(II) (listing murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling). Second, subparagraph (I) employs the phrase "as an element." U.S.S.G. § 2L1.2 APP. NOTE 1(B)(ii)(I). This phrase is every bit as categorical as "by its nature." *See United States v. Fulford,* 267 F.3d 1241, 1250 (11th Cir.2001) (quoting prior case law for the proposition that "[t]he phrase 'as an element' only permits an examination of the statute under which the defendant was convicted").

jurisprudence and the exception thereto in the context of U.S.S.G. § 2L1.2(b)(1)(A)(ii). *Calderon–Pena,* 339 F.3d 320, at 327–28; *but cf. United States v. Claiborne,* 132 F.3d 253, 255 & n. 2 (5th Cir.1998) (per curiam) (questioning whether Taylor and case interpreting 18 U.S.C. § 924(e) are pertinent to cases involving the Sentencing Guidelines), *cert. denied,* 523 U.S. 1144, 118 S.Ct. 1855, 140 L.Ed.2d 1103 (1998). However, in *Calderon–Pena,* the court of appeals stated an important qualification regarding *Taylor*'s exception to the categorical approach. The court reiterated "*Rodriguez–Rodriguez*'s admonishment not to consider the facts underlying the conviction." *Calderon–Pena,* 339 F.3d 320, at 328. That is, a sentencing court may only "look[ ] to the indictment to determine which *elements* in a statute of conviction were satisfied." *Id.* (emphasis in original). The preceding qualification was central to the *Calderon–Pena* court's holding: "We therefore conclude that a court may look to the indictment and, if necessary, the jury instructions, *for the limited purpose* of determining which of a series of disjunctive elements a defendant's conviction satisfies." *Id.* (emphasis in original). It is this qualification that undoes the Government's argument.

The Court agrees with the Government's argument that, under certain circumstances, a defendant's judgment might be ambiguous on account of the fact that the statute in question harbors multiple offenses. Likewise, Tᴇx. Pᴇɴ. Cᴏᴅᴇ § 30.01 does create a definitional overlap between "buildings" and "habitations" (*i.e.,* all habitations are buildings, but not all buildings are habitations). In the instant case, however, there is no ambiguity in the judgment of conviction, which expressly notes that the Defendant pleaded guilty to a "State Jail Felony" of "Burglary of a Building." *See Docket No. 15* (copy of Defendant's "Order of Deferred Adjudication" attached). Of the disjunctive burgla-ry-related offenses contained in Tᴇx. Pᴇɴ. Cᴏᴅᴇ § 30.02, only one is a state jail felony: Tᴇx. Pᴇɴ. Cᴏᴅᴇ § 30.02(c)(1), which pertains solely to burglaries "committed in a building other than a habitation." Thus, notwithstanding the statutory potential for ambiguous judgments, this particular Defendant's conviction is entirely unambiguous. The Defendant did not plead guilty to an offense involving a habitation or dwelling; the aforesaid judgment readily conveys which of the statute's disjunctive elements were involved in his conviction. As such, consideration of matters beyond the fact of Defendant's conviction and materials other than the judgment of conviction and relevant statute is unwarranted. *See United States v. Fulford,* 267 F.3d 1241, 1249 (11th Cir.2001) (quoting *United States v. Spell,* 44 F.3d 936, 939 (11th Cir.1995) (per curiam), for the proposition that " 'a district court . . . may inquire into the conduct surrounding a conviction if ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment itself' ").

Moreover, examination of the indictment in this case could only detract from an otherwise clear judgment. The January 23, 2002 indictment charged the Defendant with "Burglary of a Habitation" and references Tᴇx. Pᴇɴ. Cᴏᴅᴇ § 30.02(1)(d). *See Docket No. 15* (copy of indictment attached). Unfortunately, there is no § 30.02(1)(d). As the statute in question was last amended in 1999, the absence of a § 30.02(1)(d) is not attributable to any intervening change in the law. It could be that the State merely inverted the (1) and (d) and meant to invoke § 30.02(d)(1). However, such a citation would be peculiar, because subsection (d) only makes sense when read in its entirety; sections 30.01(d)(1)-(2) are conjunctive and render burglaries of habitations a felony of the first degree when "any party to the offense entered the habitation with intent to com-

mit a felony other than felony theft or committed or attempted to commit a felony other than felony theft." TEX. PEN. CODE § 30.02(d). Nothing in the indictment or elsewhere indicates that § 30.02(d) was actually at issue (*i.e.,* Defendant's prior burglary is not alleged to have entailed a felony other than theft). The more general burglary offense involving habitations, which is a felony of the second degree, is provided for in TEX. PEN. CODE § 30.02(c)(2). The factual recitation in the indictment comports with this more general burglary of a habitation provision. Given the foregoing discrepancy, the Court is unwilling to invest the indictment with the sort of reliability that the Government recommends.

Notwithstanding the clarity of the judgment and demonstrated unreliability of the indictment, the Government argues that the indictment's factual recitation proves that the Defendant's underlying burglary conviction was a "burglary of a dwelling" as per U.S.S.G. § 2L1.2 App. Note 1(B)(ii)(II). *Docket No. 15* at ¶ 7; *Docket No. 18* at ¶¶ 4–5. To be sure, the indictment did charge the Defendant with "intentionally or knowingly enter[ing] a habitation, without the effective consent of . . . the owner thereof, and attempt[ing] to commit or committ[ing] theft of property, to wit: a television set and jewelry." *See Docket No. 15* (copy of indictment attached). *However, the Defendant pleaded guilty not to the charge alleged in the indictment, but to a lesser included offense, one which expressly does not include habitations within its scope. See id.* (copy of "Order of Deferred Adjudication" affixed). The judgment does not disclose what factual allegations were established in support of this plea. The state court judgment merely notes that, "having heard all evidence from the State and the Defendant, and having heard argument of counsel for both parties, [it] found that there was sufficient evidence to support *the De-*

*fendant's plea,"* as opposed to the indictment. *See id.* (emphasis added).

As federal district courts routinely inform jurors, an indictment "is simply the description of the charge made by the government against the defendant, but it is not evidence that the defendant committed a crime." FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL) 1.01 Preliminary Instruction (West 2001); *see also id.* at 1.05 Presumption of Innocence, Burden of Proof, Reasonable Doubt ("The indictment or formal charge against a defendant is not evidence of guilt."). An indictment is a mere pleading. FED. R. CRIM. P. 12(a). Defendants are also routinely advised of this fact in Rule 11 colloquies. *See* FED. R. CRIM. P. 11(b)(1)(B)-(C). Accordingly, a plea of guilty to an altogether different criminal offense than the one charged in an indictment is no more an admission of the conduct charged in the indictment than a settlement of claims in a civil suit constitutes a stipulation to the factual averments in a plaintiff's complaint.

If the Court were faced with a situation in which a defendant had pleaded guilty to an offense as charged, as well as its factual predicate, without reservation, then the defendant would be bound by said charging papers. *United States v. Garza,* 921 F.2d 59, 60–61 (5th Cir.1991) (relying on *Taylor*), *cert. denied,* 502 U.S. 825, 112 S.Ct. 91, 116 L.Ed.2d 63 (1991). The instant case, however, does not present such a situation. *Taylor*'s exception to the categorical approach, under which a court may properly examine the charging papers related to a prior conviction, is narrowly drawn. *United States v. Martinez–Cortez,* 988 F.2d 1408, 1412 (5th Cir.1993), *cert. denied,* 510 U.S. 1013, 114 S.Ct. 605, 126 L.Ed.2d 570 (1993). The examination of underlying charging instruments is limited by the principle that a court may consider an indictment if and only if the defendant

actually pleaded guilty to the charge(s) contained therein. *See United States v. Turner,* 305 F.3d 349, 351 (5th Cir.2002) ("The Guidelines and our jurisprudence require that ... we consider only the conduct charged in the count of which the defendant was convicted."); *United States v. Allen,* 282 F.3d 339, 342 (5th Cir.2002) (stating that, even under the exception to the categorical approach, a court would look to an indictment solely to determine what "the jury necessarily had to find" in order to convict); *Spell,* 44 F.3d at 940 ("We hold that the district court erred by relying on the charging document without determining whether Appellant pled guilty to the crimes charged."); *cf. United States v. Gomez–Hernandez,* 300 F.3d 974, 980–81 (8th Cir.2002) (looking to circumstances underlying prior conviction where defendant had pled guilty to the relevant crime as charged); *United States v. Londono–Quintero,* 289 F.3d 147, 154–55 (1st Cir.2002) ("Given these factual details of the alleged crimes, which go well beyond a mere recitation of the various elements of the statute, the charging document [to which the defendant had pled guilty] unmistakably establishes that Londono–Quintero pled guilty to a § 800.04 violation that constitutes 'sexual abuse of a minor.' "); *United States v. Haslip,* 160 F.3d 649, 656 (10th Cir.1998) ("Where, as here, the defendant enters a guilty plea ... we have held it is appropriate for the sentencing court to 'look to the underlying indictment or information and the text of the guilty plea to determine whether the defendant was charged with *and admitted* conduct ....' ") (emphasis added), *cert. denied,* 526 U.S. 1044, 119 S.Ct. 1346, 143 L.Ed.2d 509 (1999). *Taylor* was explicit on this point:

> Also, in cases where the defendant pleaded guilty, there often is no record of the underlying facts. Even if the Government were able to prove those facts, if a guilty plea to a lesser, nonbur-glary offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to burglary.

*Taylor,* 495 U.S. at 601–02, 110 S.Ct. 2143. Obviously, the Court's distinction between burglary and non-burglary offenses is just as relevant regarding "Burglary of a Habitation" and "Burglary of a Building." Inasmuch as the Defendant pleaded guilty to the latter, it would seem unfair to consider his conviction one for the former for purposes of sentencing.

Moreover, it is noteworthy that the *Taylor* Court made the foregoing observation in the context of discussing why it would be imprudent for sentencing courts to become embroiled in factual inquiries concerning prior convictions. *Id.* at 601, 110 S.Ct. 2143. Just prior to the quoted language, the Court wrote that:

> ... [T]he practical difficulties and potential unfairness of a factual approach are daunting. In all cases where the Government alleges that the defendant's actual conduct would fit the generic definition of burglary, the trial court would have to determine what that conduct was. In some cases, the indictment or other charging paper might reveal the theory or theories of the case presented to the jury. In other cases, however, only the Government's actual proof at trial would indicate whether the defendant's conduct constituted generic burglary. Would the Government be permitted to introduce the trial transcript before the sentencing court, or if no transcript is available, present the testimony of witnesses? Could the defense present witnesses of its own and argue that the jury might have returned a guilty verdict on some theory that did not require a finding that the defendant committed generic burglary? If the sentencing court were to conclude, from

its own review of the record, that the defendant actually committed a generic burglary, could the defendant challenge this conclusion as abridging his right to a jury trial?

*Id.* The Government disavows any desire to engage in such convoluted factual inquiries. *Docket No. 18* at ¶ 4. Indeed, the Government maintains that "it is unnecessary to delve into underlying facts beyond the Grand Jury's Indictment." *Id.* What the Government's argument fails to account for is the fact that, when a defendant has not been convicted of or pleaded guilty to the charge(s) contained in an indictment, allegations that he committed the charged offense(s) and conduct are argumentative in nature and subject to evidentiary dispute. In this context, consideration of unproven charges in the sentencing process "raises the possibility of mini-trials to determine the facts underlying a prior offense. Such an 'elaborate factfinding process regarding the defendant's prior offenses' is specifically barred by *Taylor*." *Allen,* 282 F.3d at 343 (quoting *Taylor,* 495 U.S. at 601, 110 S.Ct. 2143).

### III. CONCLUSION

For the foregoing reasons, and as decreed in open court during the Defendant's sentencing hearing on August 27, 2003, the Court **SUSTAINS** the Defendant's objection and **FINDS** that the Defendant is subject to a 4–level enhancement as per U.S.S.G. § 2L1.2(b)(1)(D). This opinion is a merely a more detailed memorialization of the Court's August 27, 2003 ruling. The Defendant's sentence, as pronounced from the bench, remains.